1
2
3                **THE HONORABLE BENJAMIN H. SETTLE**
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9      **FOR THE WESTERN DISTRICT OF WASHINGTON**
                 **TACOMA DIVISION**
10

| | |
|---|---|
| Williams Business Services, Inc., a Washington corporation, dba Doug Williams Digital Marketing | No. **3:14-cv-05873-BHS** |
| Plaintiff, | PLAINTIFF'S MOTION FOR JUDGMENT ON DEFAULT PURSUANT TO F.R.C.P. 55 |
| **v.** | ***Note on Motion Calendar: Same Day*** |
| Waterside Chiropractic, Inc., a Florida corporation; | |
| **and,** | |
| Dr. Michael J. Smith, an individual; | |
| **and,** | |
| Dr. Sylvia M. Smith, an individual; | |
| Defendant(s). | |

      COMES NOW Plaintiff pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Local Civil Rule 55(b), and moves the Court for entry of judgment against Defendants.  The Court has found all Defendants in default for failure to answer or otherwise demonstrate a clear intent to appear and defend this lawsuit.  *See Dk 15 (Order of Default).*  This Motion is supported by the concurrently submitted Declaration of Douglas



1

2

3   Williams, the Declaration of Plaintiff's Counsel Mark E. Beatty, Declaration of Wendy

4   Fox, the pleadings in the Complaint, the Proofs of Service filed with the Court, the other

5   pleadings in the record, and the contemporaneously filed Memorandum of Law.

6        Plaintiff moves for entry of judgment as follows, and award of damages, costs and

7   reasonable attorney's fees, as delineated in the Claims and Prayer for Relief in the

8   Complaint and as described in the subjoined Memorandum:

9        Count I:     Willful Copyright Infringement against all Defendants, jointly and

10             severally;

11

12       Count II:    Willful Contributory Copyright Infringement against all Defendants,

13             jointly and severally;

14       Count III:   Willful Vicarious Liability for Copyright Infringement against

15             Defendants Dr. Michael J. Smith DC and Dr. Sylvia M. Smith DC,

16             jointly and severally;

17       Count IV:   Breach of Contract against Defendant Waterside Chiropractic, Inc.

18

19  DATED March 16, 2015      /s/ Mark E. Beatty

20                        MARK E. BEATTY, WSBA 37076
        beatty@rylanderlaw.com

21                        RYLANDER & ASSOCIATES PC
        P.O. Box 250

22                        Vancouver, WA 98666
        Tel: (360) 750-9931

23                        Fax: (360) 397-0473
        Attorney for Plaintiff

24

25

26

27

28

29



**MEMORANDUM OF LAW**

Plaintiff is entitled to entry of judgment on Defendants' default.  The facts establish Plaintiff's rights and Defendants' unlawful conduct, and that Defendants' unlawful conduct was willful.  All of Defendants are represented by counsel, Mr. Larry Perry.  Defendants have not filed any responsive pleading, nor have they communicated an intent to appear and defend the lawsuit, despite Plaintiff stipulating to two extensions of time and the entry of Default.  Defendants' counsel represented that Defendants Mr. & Mrs. Smith are dealing with serious medical issues as a family, but Plaintiff has no first-hand knowledge of the situation, and Defedants' counsel failed to communicate with Plaintiff's counsel regarding status or intent, except when threatened with default.  Defendants' counsel does not appear to suffer any medical condition preventing him from communicating with Plaintiff's counsel or the Court.  More importantly, the conduct at issue in the Complaint pre-dates the medical issues which Defendants have raised, and the harm to Plaintiff is ongoing, as is the unearned windfall to Defendants who continue to reap profits from their ongoing intentionally infringing conduct.

The facts supporting default judgment are established by the entry of default, except for any damages which are not of a sum-certain or otherwise easily calculated.  "Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 317-18 (E.D.N.Y. 2007).

**1.      Count I: Copyright Infringement against all Defendants**

To establish a claim of copyright infringement Plaintiff must show ownership of a valid copyright and that Defendants violated at least one of the exclusive rights of the



copyright owner under 17 U.S.C. § 106.

> "(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122...is an infringer of the copyright or right of the author, as the case may be..."

17 U.S.C.A. § 501 (West).  See also *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001), *as amended (Apr. 3, 2001)*, *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) and *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) (uploading and downloading electronic files using the internet violates at least the exclusive rights of reproduction (§ 106(1)) and distribution (§ 106(3))).

### 1.1    WBS owns a valid copyright.

Plaintiff is the owner of the copyright in the Website.  WBS automatically owned its employees' contributions as works made for hire (17 U.S.C. § 101), and the independent contractor which worked on the Website assigned its interests to WBS by written agreement. ***See Complaint ¶51 and Exh. 3.***

#### 1.1.1   WBS has met the registration requirement.

Registration is a prerequisite for filing a copyright infringement lawsuit for damages (17 U.S.C. § 411) but it is not a jurisdictional requirement as copyright protection attaches upon fixating the work of authorship in a tangible medium of expression.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 614 (9th Cir. 2010).  The Ninth Circuit Court of Appeals, consistent with most other Circuits, adopted the "Application Approach" such that delivering to the Copyright Office a complete application, fees and required deposit for the work – before an infringement lawsuit is filed - fulfills the registration requirement.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606

F.3d 612, 621 (9th Cir. 2010) ("We therefore hold that receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a).")

WBS delivered a complete Application, paid the required fees, and delivered the required Deposit to the Copyright Registrar on September 24, 2014 and thereafter delivered notice to Defendants. *See Complaint ¶¶ 52-54 and Exhs. 4-6*.

### 1.2    Defendants violated Plaintiff's exclusive rights under 17 U.S.C. § 106

Defendants possessed, published and distributed the Website subject to a license from Plaintiff, which license was expressly revoked as of October 8, 2014. WBS delivered written notice on September 29, 2014 to Defendants and their attorney, Larry Perry, that failure to pay the amounts due under the Contract by October 8 would result in revocation. WBS delivered written notice on October 9, 2014 to Defendants and their attorney Larry Perry that no payment had been received and the license was revoked effective October 8. *See Complaint, ¶¶ 57-62 and Exhs. 7-10*.

### 1.3    Infringement was willful

To establish willfulness under the Copyright Act Plaintiff must show: "... (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights..." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)(internal citations omitted); 17 U.S.C. 504(c)(2). In this case, Defendants (and their attorney) had actual notice that after October 8, 2014 their unauthorized acts infringed Plaintiff's copyright. Defendants had actual notice of the DMCA Takedowns, and purposefully engaged new internet hosting services to commence new infringements. Therefore, each of Defendants infringements must be considered willful.



**1.4    Defendants committed at least three separate infringements, each subject to award of statutory damages.**

Defendants committed at least three separate willful infringements, each subject to award of statutory damages and not constituting a continuous infringement. Section 504(c) provides in pertinent part:

> "(1)...the copyright owner may elect...an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just...
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000..."

17 U.S.C.A. § 504(c) (West).

In addition to the fact that the acts were separate and distinct, each of the three infringements is separately assessable because each act also constituted a separate act of inducing infringement.  Each time Defendants engaged an internet hosting company they induced infringement by each internet hosting company[1].  The different internet hosting companies are not jointly and severally liable with each other, so these separate acts of inducement cannot be considered a single act of infringement.

> "[W]here separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate."

---

[1] Each internet hosting company also in turn technically induced infringement by individual web users when they accessed the Website (which involves their individual computers displaying a locally cached copy).



*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir. 1997) *rev'd on other grounds Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998) (quoting H.R.Rep. No. 94–1476, 94th Cong., 2d Sess., at 162, *reprinted in* 1976 U.S. Code Cong. and Admin. News 5778).

Therefore, Defendants are liable for at least three separate willful infringements, and statutory damages should be assessed for each separate willful infringement.

### 1.4.1    First willful infringement.

Defendants continued to publish and distribute the infringing Website after October 8, despite the license revocation. Plaintiff used LiquidNet LLC as their web hosting company at that time. ***See Complaint, ¶¶ 64-75***; ***Dec. Williams, ¶¶ 2-6***. This continued publication and distribution constituted a first independent act of infringement, and the infringement was with actual knowledge by all Defendants that it violated Plaintiff's copyright.

### 1.4.2    Second willful infringement.

Plaintiff delivered a DMCA Takedown Notice (pursuant to 17 U.S.C. § 512(c)) to LiquidNet US LLC on October 20, 2014, to remove and/or block access to the infringing Website. Plaintiff also delivered written notice to Defendants of the October 20 DMCA Takedown Notice to LiquidNet. Plaintiff had determined that LiquidNet was hosting the Website, thereby publishing and distributing it to the public. LiquidNet removed the Website by October 24. However, by October 28 Plaintiff determined that Defendants had engaged 1&1 Internet, Inc., to republish the Website. ***See Complaint, ¶¶ 64-75; Dec. Williams, ¶¶ 2-6***. In addition to the unauthorized publication and distribution of the Website via 1&1 Internet, Defendants would have had to reproduce the Website by



uploading or delivering an additional electronic copy to 1&1 Internet to place on 1&1 Internet's servers. ***Dec. Williams, ¶¶2-6***.

The unauthorized reproduction, publication and distribution of the Website via 1&1 Internet's servers after LiquidNet removed the Website from its servers responsive to the October 20 DMCA Takedown Notice constituted a second willful infringement by Defendants.

### 1.4.3   Third willful infringement.

Plaintiff delivered a DMCA Takedown Notice to 1&1 Internet on October 31, 2014. ***See Complaint, ¶¶ 67-8, 90-1; Dec. Beatty re Judgment, ¶2 and Exh. 1 (takedown letter)***. On November 4 Plaintiff received confirmation from 1&1 Internet that they had disabled access to the Website, which Plaintiff then confirmed. ***See Dec. Fox, Exh. 1 (email confirmation)***. However, on November 6 Plaintiff became aware that the Website was back up, now hosted by Hostgator.com. ***See Dec. Williams, ¶5 and Exh. 5 thereto***. Again, Defendants would have had to reproduce the Website in order to upload an electronic copy to Hostgator.com in order for Hostgator.com to place it on their servers for publication and distribution. ***Dec. Williams, ¶6***.

The unauthorized reproduction, publication and distribution of the Website via Hostgator.com's servers after 1&1 Internet removed the Website from its servers responsive to the October 31 DMCA Takedown Notice constituted a third willful infringement by Defendants. The Website remains up via Hostgator.com as of the filing of this Motion. ***Dec. Williams, ¶7***. In fact, the DMCA Takedown Notice to 1&1 Internet included notice that this lawsuit had been filed, but Defendants still copied and republished the Website. ***Dec. Beatty re Judgment, Exh. 1.***


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

Therefore, Defendants are liable for statutory damages on at least three separate willful infringements.

**2.      Count II: Contributory Copyright Infringement against all Defendants**

"Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001), *as amended (Apr. 3, 2001)*, aff'd sub nom. *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) and *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002).  Defendants directly infringed, but also induced direct infringement by internet hosting service companies LiquidNet, 1&1 Internet, and Hostgator.com.  These hosting companies further induced infringement by the end users who download and display the copyright protected content on their computers.  Defendants had actual knowledge their actions were inducing infringement from the revocation notices of September 29 and October 9, and the fact that they re-published the Website after each DMCA takedown.

Therefore, Defendants are jointly and severally liable for statutory damages based on their willful inducement of infringement.

**3.      Count III: Vicarious Liability for Copyright Infringement against Defendants Dr. Michael J. Smith DC and Dr. Sylvia M. Smith DC**

**3.1      Individual Defendants are personally liable either directly or vicariously**

Copyright infringement is in the nature of a tort, and "...a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf".  *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th



Cir. 1996) (internal quotation marks and citation omitted) (holding corporate officers personally jointly and severally liable with corporation for their tortious acts, without need to pierce corporate veil). Courts have adopted a two-prong test to determine whether a corporate officer is jointly and severally liable for copyright infringement with the corporation: (1) the officer had the right and ability to supervise the infringing activity, and (2) the officer has a direct financial interest in such activities. *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996) (adopting test control plus benefit test developed in Shapiro and subsequent cases); *Merrill v. Bill Miller's Bar-B-Q Enterprises, Inc.*, 688 F. Supp. 1172, 1175 (W.D. Tex. 1988).

> "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001), *as amended (Apr. 3, 2001)*, aff'd sub nom. *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) and *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) (internal citations and quotations omitted).

The Court has already entered default against all Defendants, so direct liability for infringement is established. However, even if the Court were concerned about direct liability in relation to individual Defendants Sylvia and Michael Smith, they are vicariously jointly and severally liable with their corporation Waterside Chiropractic, Inc., and this was pleaded in the Complaint so they did have actual notice of this liability. ***See Complaint, ¶¶ 93-95*** *(Third Claim for Relief: Vicarious Liability for Copyright Infringement by Dr. Michael J. Smith DC and Dr. Sylvia M. Smith DC)*. ***See also Complaint, ¶¶ 7-12 & 84***.

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

3.1.1   <u>Defendants Sylvia Smith and Michael Smith exercised direct control over Waterside Chiropractic, Inc. and received direct financial benefit from Waterside Chiropractic's infringing acts.</u>

The Annual Reports filed by Waterside Chiropractic, Inc. on February 27, 2014 and January 28, 2015 list Defendants Dr. Michael J. Smith and Dr. Sylvia M. Smith as the only directors of Waterside Chiropractic. Michael J. Smith is also listed as Registered Agent. ***Dec. Beatty re Judgment, ¶3 and Exh. 2***. Defendants Michael and Sylvia Smith also represented themselves to Plaintiff as being the owners of Waterside Chiropractic, and having sole authority to approve the Contract and direct the actions of the corporation. ***Dec. Williams, ¶ 9 and Exh. 3, p.1.*** "Mike" Smith is also listed as the Registrant and Administrator for the infringing Watersidechiropractic.com website. ***Dec. Williams, ¶8 and Exh. 1 (Whois)***. Defendant Sylvia Smith personally threatened to sue Plaintiff and Plaintiff's owner Mr. Williams in September 2014. ***Dec. Williams, ¶10 and Exh. 2***.

Sylvia and Michael Smith receive direct financial benefit from Waterside Chiropractic's infringing behavior because they own the corporation and therefore receive the profits, which in a corporation must be allocated based on ownership interest. Additionally, both Sylvia and Michael Smith are practicing chiropractors with Waterside Chiropractic, and so receive financial benefit from new patients brought to them through the Website, as well as existing patients who maintain contact through the Website. ***Dec. Williams, ¶11 & Exh. 3, p.1***.



Therefore, Defendants Sylvia and Michael Smith are either directly or vicariously liable for statutory willful copyright infringement damages, jointly and severally, with Defendant Waterside Chiropractic. The net effect is the same, whether direct or vicarious.

**4.      Count IV: Breach of Contract against Defendant Waterside Chiropractic, Inc.**

Contract damages are intended to make the non-breaching party whole, but not to act as penalty. Under Washington law, Plaintiff is entitled to recover direct damages and indirect damages, including incidental and consequential damages, so long as the consequential damages are not speculative, arose from the breach, and were reasonably contemplated by the parties at the time the Contract was entered. *Am. Nursery Products, Inc. v. Indian Wells Orchards*, 115 Wash. 2d 217, 254, 797 P.2d 477, 497 (1990) (*en banc*); *Lincor Contractors, Ltd. v. Hyskell*, 39 Wash. App. 317, 321, 692 P.2d 903, 907 (1984)).

**4.1      Direct Damages**

4.1.1   Development Contract Cost

The Contract required payment by Waterside Chiropractic of $10,000 for the creation of the Website, with $5,000 paid up front, and $5,000 owed upon publication ("going live"). ***Dec. Williams ¶¶12-15 and Exh. 3***. Waterside paid only $7,500 although the Website was published in March, 2014. ***Dec. Williams ¶¶12-15; Exh. 3 p.19; Exh. 4***. Therefore, Waterside owes $2,500 in direct damages on the Contract.

4.1.2   Unpaid Website hosting and maintenance costs.

The Contract required the Website be hosted and maintained by WBS, at a rate of $650 per month. ***Dec. Williams ¶¶16-21; Exh. 6 (Invoice); Exh. 3 (Contract)***. The Contract did not assign the copyrights in the Website to Waterside Chiropractic. Waterside's use was subject to a license, with the terms described in the



Contract.  The Contract also provided that the hosting fees could be paid as an annual lump sum in advance at the rate of $6,500 per year (i.e. saving $1,300 per year).  ***Dec. Williams, ¶16 and Exh. 3.***

WBS commenced providing hosting services at the end of March, 2014 but Waterside refused to pay the monthly invoices.  WBS terminated hosting and maintenance services on June 30, 2014 because Waterside refused to pay what it owed on the website design and the monthly hosting fees.  Therefore, Waterside owes direct contract damages of at least three months of unpaid hosting services, totaling **$1,950**.  ***Dec. Williams, ¶¶17 and Exh. 6 (invoice)***.

### 4.2    Incidental and Consequential Damages

Damages for breach of contract go to all losses which were reasonably foreseeable at the time of contract, or for which the breaching party had special knowledge of the risk.  "The existing rule requires only reason to foresee, not actual foresight." *Wilkins v. Grays Harbor Cmty. Hosp.*, 71 Wash. 2d 178, 186, 427 P.2d 716, 721-22 (1967)(quoting 5 Corbin, Contracts s 1009 at 7)(recognizing incidental and consequential damages as recoverable under breach of contract); *Am. Nursery Products, Inc. v. Indian Wells Orchards*, 115 Wash. 2d 217, 222, 797 P.2d 477, 480 (1990)(incidental and consequential damages only excludable where contract includes express exclusions, and such exclusions are not unconscionable).  "A plaintiff may recover lost profits if the evidence establishes lost profits with reasonable certainty. Evidence of damage is sufficient if it is the best evidence available and affords a reasonable basis for estimating the loss." *Spradlin Rock Products, Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor Cnty.*, 164 Wash. App. 641, 663, 266 P.3d 229, 239 (2011)(internal citations and quotations omitted).



4.2.1.  <u>Lost Profits</u>

Waterside's breach of the Contract also means WBS lost the revenues from continued future hosting and maintenance services as well.  WBS was willing to perform extra work outside the scope of the Contract and write off extra costs in developing the Website because WBS reasonably expected to be able to recoup its losses through the hosting and maintenance fees.  Some of this out-of-scope work required Plaintiff to hire outside contractors, and have employees work extra hours, which Plaintiff was obligated to pay regardless of Waterside Inc.'s refusal to pay its obligations under the Contract. WBS figured that this would require approximately one year to recoup losses, and thereafter WBS would be attaining normal profit margins from its hosting and maintenance services.  ***Dec. Williams, ¶19***.  Defendants continue to publish the Website and use it to market their business and maintain customer relations.  Therefore, lost profits damages are reasonable and foreseeable under the circumstances, and were contemplated by the parties when they entered the Contract. *Spradlin Rock Products, Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor Cnty.,* 164 Wash. App. 641, 663, 266 P.3d 229, 239 (2011).

WBS determined that its average gross profit margin for 2014 was ***59%,*** which included Mr. Williams' salary as owner.  ***Dec. Williams, ¶21.  Plaintiff counted the owner's salary in the "profit" because Mr. Williams is the sole owner of WBS and WBS files federal taxes as a "Subchapter S" corporation.  Therefore, the corporation profits are taxed on a "flow through" basis***.  Although one cannot presume the hosting and maintenance contract would continue forever, at least **three years** is a reasonable expectation based Mr. Williams' experience in the industry and the history of WBS' other


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

customers.  At three years the customer might simply continue with their existing website, or might redesign their website again.  Based on three years, this amount to lost profits of **$11,121.50,** determined as follows (*see Dec. Williams, ¶¶17-21*):

- **(9 months * $650 per month * 59% profit margin) + (2 years * $6500 per year * 59% profit margin) = $11,121.50**

- Plaintiff used 33 months, because the first three months (April – June 2014) were already included as part of the direct damages calculation.

- The first year was not paid in lump sum, so the 9 months July-March should be subject to the $650 per month rate in the Contract.

- For the second and third years Plaintiff applied the reduced up-front payment rate of $6,500 per year, because this payout of lump sum damages would effectively equate to up-front payments.

### 4.2.2.   Incidental Costs and Losses

Plaintiff consumed approximately 68 hours of Mr. Williams' time, from September 8, 2014 through February 10, dealing with Defendants' threat to sue, DMCA takedowns, settlement issues, litigation issues, and other matters directly related to and arising from Defendants' failure to fulfill its obligations under the Contract.  *Dec. Williams, ¶ 22*.  This was time that Mr. Williams was unable to perform other useful work for which he could have been compensated.  At WBS' normal billing rate of $125 per hour, this equates to **$8,500** in billable time.

## 5.      Count V: Equitable Relief of Quantum Meruit against all Defendants

Quantum Meruit was pleaded as an alternative theory of relief to the breach of contract.  The entry of default against Waterside Chiropractic on Count IV (Breach of



Contract) necessarily means that Count V is inapposite, and additional amounts awarded based on Quantum Meruit would be double recovery.  Therefore, Plaintiff waives recovery based on Count V based on the entry of default on Count IV (Breach of Contract), but Plaintiff reserves the right to pursue this claim as an alternative theory of recovery if the default is vacated for any reason.

**6.      Count VI: Unjust Enrichment against all Defendants**

The facts supporting Unjust Enrichment are established by the entry of default. However, due to the fact that Defendants refuse to appear, Plaintiff was denied discovery establishing Defendants' ill-gotten profits.  Therefore, Plaintiff waives recovery based on Count VI (Unjust Enrichment) based on the entry of default on Counts I-IV (Copyright and Breach of Contract), but Plaintiff reserves the right to pursue this claim if the default is vacated for any reason.  Additionally, Plaintiff submits that the Court should take this factor into account in determining statutory copyright damages for willful infringement.

**7.      Statutory Copyright Damages, Attorney's Fees and Costs**

Defendants' refusal to appear and defend means Plaintiff was denied discovery establishing Defendants' ill-gotten profits.  Therefore, based on the posture of the case, the entry of default, and in an effort to reduce costs in obtaining judgment, Plaintiff elects to recover statutory copyright damages, pursuant to 17 U.S.C. § 504(c)(1) and (2).  Plaintiff reserves the right to change this election in the event the default is vacated for any reason.

The Copyright Act mandates a range for statutory damages for each infringement. Willful infringement mandates not less than $750 per infringement, up to a maximum of $150,000 per infringement.  17 U.S.C. § 504(c)(2).  Courts consider the objective factors of each case in determining the appropriate amount for statutory damages, including: (i) the


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

expenses saved by Defendants in connection with the infringements; (ii) profits reaped by the Defendants in connection with the infringements; (ii) revenues lost by the Plaintiff as a result of Defendants' infringement; (iii) the infringers' state of mind whether willful, knowing, or merely innocent; (iv) Defendants' pre-litigation and litigation conduct; and, (v) the deterrent value of an award. *Cross Keys Pub. Co. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995) (imposing statutory damages upon default); *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1335 (D. Mass. 1994) (using license contract value as an important basis in determining appropriate statutory damages).

Deterrent value is considered an important overriding factor in determining an appropriate statutory award, especially in cases of willfulness. Courts have considered such factors as: (i) the fact of acting with actual knowledge; (ii) the brazenness or objective unreasonableness of defendants' disregard for the copyright owner's rights; (iii) pre-litigation efforts to obtain a reasonable settlement; and, (iv) the amount of award in relation to the size of Defendants' business. *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (citing cases) (minimum award appropriate where defendants admitted liability and offered reasonable settlement prior to litigation).

> "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but is also designed to discourage wrongful conduct. *F.W. Woolworth,* 344 U.S. at 233, 73 S.Ct. at 225."

*Cross Keys Pub. Co. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995)

In this case, the Court should consider at least the following factors in determining proper award of statutory damages:



(1) The infringing conduct was willful, and egregiously so.

(2) Defendants committed at least three willful infringements.

(3) Plaintiff attempted to enforce its rights under the Copyright Act many times without resort to litigation, and each time offered settlement which included unlimited license. Plaintiff attempted to negotiate a settlement in good faith in Summer of 2014, but was simply rebuffed. Plaintiff again attempted to resolve the matter with notice of the license revocation, but was met with silence. Plaintiff utilized the DMCA Takedown provisions of the Copyright Act, coupled with offers of settlement, but each time Defendants simply disregarded this and commenced new infringements.

(4) Plaintiff's business is design, hosting and maintenance of websites. Plaintiff has lost future hosting and maintenance fees, which are not completely compensated for by the Breach of Contract damages.

(5) Plaintiff has suffered other harm to its business, including having to lay off employees, which are difficult to reduce to a sum certain. *Dec. Williams, ¶23*.

(6) Defendants have profited and been unjustly enriched from their infringement, but Plaintiff is left unable to determine the amount of Defendants' ill-gotten profits. Defendants continue their infringing conduct even now, and continue to obtain profit from their infringement. This in spite of the fact Defendants could have returned to using their prior website.

(7) Defendants operate a chiropractic business with offices in seven cities throughout Florida and twelve chiropractic doctors. *Dec. Williams, ¶24.* Therefore, the Court may presume their business is substantial.



1
2
3

**7.1     Plaintiff's Request for Statutory Damages**

4
5
6
7

   With the above factors in mind, Plaintiff requests the Court award statutory copyright infringement damages for Counts I, II and III against all Defendants, jointly and severally, in the amount of **$23,400 per infringement**.  This amount is well within the

8
9
10
11
12

Court's discretion.  The amount is equal to 36 months of hosting and maintenance revenues at $650 per month.  Plaintiff asserts this comports with due process concerns because it is an objectively reasonable and foreseeable amount, effectively a license fee, rooted in a valuation of the property to which Defendants agreed and therefore indicating the value they perceived relative to their prospective profits anticipated from the Website (i.e. profits

13
14
15
16

reaped by the Defendants in connection with the infringements)[2].  Additionally, this calibrates the deterrent objectives of the statute to the actual behavior and reasonably foreseeable harm caused, which is a relevant consideration in light of the tort-nature of copyright infringement.

17
18

**7.2     The Court should award full costs and reasonable attorney's fees to Plaintiff**

19
20

   The Copyright Act permits the Court to award full costs and reasonable attorney's fees to the prevailing party.

21
22
23
24

> "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

17 U.S.C. § 505.

25
26
27
28

---

[2] This would not double recovery with the Contract damages, because Plaintiff, if litigated, could seek Defendants' profits, but due to the default status does not have ability to do so. Moreover, the Contract damages are solely against Waterside Chiropractic, so would not act as a deterrent to Defendants Sylvia and Michael Smith.

29



"'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–437, 103 S.Ct. 1933, 1941–1942, 103 S.Ct. 1933 (1983)).   Courts have enumerated a "nonexclusive" list of factors to consider, including: (i) frivolousness of the nonprevailing party's defenses; (ii) motivation of the losing party; (iii) objective unreasonableness of the losing party's factual and legal claims/defenses; and, (iv) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (FN 19), 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994)(quoting and *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986)).   The Ninth Circuit has emphasized this fourth factor, especially in cases (as here) of obvious willfulness where Defendants have relied on procedural hurdles and costs of litigation in an effort to dodge responsibility for egregious misconduct. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996)(remanding to reconsider District Court's denial of attorney's fees to prevailing plaintiff).  *See  Magnuson v. Video Yesteryear*, No. C-92-4049 DLJ, 1996 WL 784564, at *4 (N.D. Cal. Dec. 26, 1996)(unpublished; on remand)(awarding full costs and majority of attorney's fees upon consideration of the factors set out in *Magnuson, 85 F.3d 1424*).   Accord *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991).   In *Chi-Boy Music*, the Seventh Circuit found award of attorney's fees and costs was "particularly appropriate" where, as here, Defendants "treated the copyright laws with disdain... Because of this attitude, the plaintiffs went out of their way and exerted considerable time and effort in pursuing this matter." *Id.*



Applying the nonexclusive factors here, it is clear costs and attorney's fees are appropriate.

### 7.2.1.   Frivolousness.

Defendants' failure to appear, despite being represented by counsel, should be considered frivolous, causing Plaintiff to needlessly incur costs and fees. This is especially so, in light of the fact that Defendant Waterside Chiropractic, Inc., is a corporation of substantial size that continues to operate as a going concern.

### 7.2.2   Motivation.

Under the circumstances, Plaintiff is unable to assess Defendants' motivation in driving this case to litigation. The Court should apply a presumption of bad faith motivation in light of the other circumstances. Regarding individuals Sylvia and Michael Smith, Plaintiff acknowledges that (assuming their counsel's representations to be true regarding Sylvia Smith's health) they might face challenges in answering the claims. However, the Court must consider other factors as outweighing this. First, their illegal conduct pre-dated the medical issues raised by their counsel, which were raised only after the time for Waterside Chiropractic to file an Answer expired. Second, Plaintiff made multiple attempts to resolve this dispute before filing this lawsuit, and those settlement offers were delivered to their attorney as well as to them personally. Neither they, nor their attorney, even acknowledged the communications. Third, at a time when they may claim to have been unable to respond (although there is no reason that their attorney was unable to communicate), they were able to twice circumvent valid DMCA Takedowns. Finally, Plaintiff's counsel expressly told Defendants' counsel, Mr. Perry, that Plaintiff would not oppose Mr. Perry filing a motion to extend the time to file an Answer with this Court on the



1

2

3  grounds that Mr. Perry was not admitted to the Court, if Defendants submitted declarations

4  to support their representations about Sylvia Smith's ill health and explanation of why

5  Waterside Chiropractic was also rendered unable to appear.  Defendants' counsel did not

6  respond, and did not submit the matter to the Court.  There is no valid excuse.

7          7.2.3   <u>Objective Unreasonableness</u>.

8                  This factor weighs in favor of awarding costs and attorney's fees.  The fact

9  that Plaintiff delivered written notice to Defendants and their counsel that Defendants were

10  infringing, and their subsequent re-publication of the Website after two DMCA

11  Takedown's, renders their defenses objectively unreasonable.

12          7.2.4   <u>Deterrence and Compensation</u>.

13                  This is a dominant factor to consider under the circumstances of this case,

14  and weighs heavily in favor of awarding costs and attorney's fees.  The *Magnuson* court

15  noted that in cases where Defendants flagrantly flout the copyright laws and essentially

16  dare a copyright owner to incur expenses of a lawsuit to enforce their rights, awarding

17  attorney's fees is essential to effective deterrence.

18

19          "The Ninth Circuit expressed special concern with the deterrence factor,
           stating that: "In this case, we are particularly concerned that the small award
20          for damages ... is insufficient to deter future copyright infringement." Ninth
           Circuit Opinion at 6810. Whereas the other *Fogerty* factors focus on the
21          reasonableness of the parties' claims themselves, the deterrence factor
           focuses on the response to an established infringement. The expressed
22          concern of the Ninth Circuit directs this Court to consider the award of
           attorney's fees under § 505 as a mechanism by which a sufficient sanction
23          can be imposed on a copyright infringer to deter future misconduct by that
           infringer and others."

24

25  *Magnuson v. Video Yesteryear*, No. C-92-4049 DLJ, 1996 WL 784564, at *3 (N.D. Cal.

26  Dec. 26, 1996).  Additionally, Plaintiff tried to pursue a path which entailed the least legal

27  costs, but was simply rebuffed without explanation at every attempt.  Plaintiff should not be

28

29



penalized for first attempting to resolve this dispute and enforce its rights without resort to the expense of a lawsuit.

### 7.2.5   Summary of Attorney's fees and Costs

Plaintiff is entitled to receovery for 100% of costs and reasonable attorney's fees , including Plaintiff's pre-litigation enforcement actions under the Copyright Act pursuant to the DMCA takedown provisions, 17 U.S.C. § 512(c) and settlement efforts.

## 8.   Interest

Plaintiff requested prejudgment and postjudgment interest in its Prayer for Relief. *See Complaint, Prayer for Relief, ¶(g)*.  Post-judgment interest is mandatory under 28 U.S.C.A. § 1961 and applies to attorney's fees and costs as well as any damages awarded. *Lew Wenzel & Co. of S. California v. London Litho Supply Co.*, 563 F.2d 1367, 1369 (9th Cir. 1977); *Raff v. Maggio*, 746 F. Supp. 1207, 1208 (E.D.N.Y. 1990)(citing *Lew Wenzel & Co.*, id).

Pre-judgment interest is recoverable in copyright infringement actions, in the discretion of the Court, commencing from the date of the first infringing activity.  Such remedy is especially appropriate in cases of willful infringement, because it is consistent with the intent to discourage needless delay and frivolous defenses.  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g,* No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004).

> "It is not difficult to imagine a case involving undisputed copyright infringement—as is the case here—in which prejudgment interest may be necessary to discourage needless delay and compensate the copyright holder for the time it is deprived of lost profits or license fees. Nor does the ability to recover multiple forms of remedies render prejudgment interest superfluous. Frequently, a copyright plaintiff can only recover one type of



1
2
3
remedy, be it actual damages or indirect profits, and the statutory availability
4
of both remedies does not mitigate harm caused by delay in making
reparations—a harm the remedy of prejudgment interest is uniquely tailored
5
to address. Simply put, prejudgment interest is a different remedy for a
different harm. Because prejudgment interest may be necessary at times to
6
effectuate the legislative purpose of making copyright holders whole and
removing incentives for copyright infringement, we hold that the district
7
court erred in concluding that prejudgment interest is unavailable under the
Copyright Act of 1976, and we remand for further consideration."

8
*Id.*

9
Prejudgment interest is also presumptively available in cases such as breach of
10
contract, where claim is either liquidated or a readily determinable sum, in order to make
11
the plaintiff whole.     *Hansen v. Rothaus*, 107 Wash. 2d 468, 472, 730 P.2d 662, 664
12
(1986)(*prejudgment interest presumptively available unless equitable circumstances*
13
*require otherwise)*.   "We reiterate the court's established analysis, and hold that whether
14
prejudgment interest is awardable depends on whether the claim is a liquidated or readily
15
determinable claim, as opposed to an unliquidated claim."  *Id*.  *See also McCalla v. Royal*
16
*MacCabees Life Ins. Co.*, 369 F.3d 1128, 1130 (9th Cir. 2004)(applying NV state law).
17
"[P]rejudgment interest traditionally has been considered part of the compensation due
18
plaintiff."  *Id*.

19
In this case, WBS was denied full payment on a contract for development and
20
continuing provision of services in which it had to pay expenses out-of-pocket for
21
employees, contractors and leasing server space, among other things.  Prejudgment interest
22
is necessary to make Plaintiff whole, and no equitable factors weigh against an award.
23
Plaintiff asserts prejudgment interest is appropriate commencing from June 30, 2014, the
24
date the Contract was effectively terminated for lack of payment and the last date of
25
services provided under the Contract.
26
27
28
29



1

2

3      Plaintiff asserts that the rate of interest provided in 28 U.S.C. § 1961 is appropriate

4 to be applied for all prejudgment and postjudgment interest amounts, for the sake of

5 simplicity.

6

7                                 **CONCLUSION**

8      WHEREFORE, Plaintiff requests entry of judgment and award of damages on

9 Defendants' default, award of costs of the lawsuit, and full award of reasonable attorney's

10 fees, as follows:

| Count | Amount | Defendants | Summary |
|---|---|---|---|
| I, II and III: Willful copyright infringements | $70,200 | All Defendants, jointly and severally | Statutory damages for willful infringement and inducement, directly and vicariously |
| IV: Breach of Contract | $24,071.50 | Waterside Chiropractic, Inc. | $2,500 unpaid Contract; $1,950 (three months unpaid host & maintenance); $11,121.50 (9 + 24 months lost profits); $8,500 (incidental damages). |
| Costs of lawsuit | TBD upon submission of Bill of Costs | All Defendants, jointly and severally | |
| Reasonable Attorney's fees | TBD upon submission of Bill of Costs | All Defendants, jointly and severally | |
| Prejudgment Interest | Applicable to damages only. | All Defendants, jointly and severally | At rate specified in 28 U.S.C. § 1961. |
| Postjudgment Interest | Applicable to damages, costs, and attorney's fees. | All Defendants, jointly and severally | At rate specified in 28 U.S.C. § 1961. |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29



RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3

4   DATED March 16, 2015        /s/ Mark E. Beatty
                                MARK E. BEATTY, WSBA 37076
5                               beatty@rylanderlaw.com
                                RYLANDER & ASSOCIATES PC
6                               P.O. Box 250
                                Vancouver, WA 98666
7                               Tel: (360) 750-9931
                                Fax: (360) 397-0473
8                               Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

**26—MOTION FOR ENTRY OF JUDGMENT ON DEFAULT**
**(3:14–cv–05873–BHS)**
3/16/2015 12:41:07 PM DOWL003

