Honorable Benjamin H. Settle

MARK E. BEATTY, WSBA 37076
beatty@rylanderlaw.com
RYLANDER & ASSOCIATES PC
P.O. Box 250
Vancouver, WA 98666
Tel: (360) 750-9931
Fax: (360) 397-0473
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## TACOMA DIVISION

| | |
|---|---|
| Williams Business Services, Inc., a Washington corporation, dba Doug Williams Digital Marketing | No. **3:14-cv-05873-BHS** |
| Plaintiff, | ORDER ENTERING JUDGMENT ON DEFAULT |
| v. | |
| Waterside Chiropractic, Inc., a Florida corporation; | Noting Date: Same Day |
| and, | |
| Dr. Michael J. Smith, an individual; | |
| and, | |
| Dr. Sylvia M. Smith, an individual; | |
| Defendant(s). | |

This matter having come before the Court upon the Clerk's entry of Default against all Defendants and the Plaintiff's Motion for Entry of Judgment on Default, the Court having considered the record and the pleadings in this matter finds that, pursuant to FRCP 54(b), there is no just reason for delay of entry of a final judgment against Defendants on

1—*[PROPOSED]* ORDER RE ENTRY OF JUDGMENT ON DEFAULT
(3:14–cv–05873–BHS)
3/16/2015 2:17:54 PM DOW1.003



the matter of damages, attorneys' fees and costs assessed.  The Court therefore GRANTS the MOTION and hereby ORDERS as follows:

### FINDINGS OF FACT

1.     Upon entry of default against all Defendants, the facts pleaded in the Complaint relating to liability are accepted as true and incorporated herein.

2.     In addition to the facts pleaded in the Complaint, the Court has considered the concurrently filed Declaration of Douglas Williams In Support of Plaintiff's Motion for Order Entering Judgment on Default (hereinafter "Dec. Williams") and Declaration of Plaintiff's Counsel Mark E. Beatty In Support of Plaintiff's Motion for Order Entering Judgment on Default (hereinafter "Dec. Beatty").

3.     Venue and personal jurisdiction are proper in this district pursuant to 28 U.S.C. § 1400, 28 U.S.C. § 1391(b) and (c), and, pursuant to FRCP 4 and Washington's long arm jurisdictional rules RCW 4.28.185, in that Defendants reside in this district and/or can be found in this district by virtue of their activities, are engaged in substantial and not isolated activities in this district, and engaged in acts in this district and/or injured persons in this district in conjunction with activities carried on within this district by Defendants and/or in the ordinary course of trade of Defendants. *Complaint, ¶4.*

4.     In addition, venue and personal jurisdiction are proper in this district in that, at least: (i) the contract at issue in this lawsuit was entered into with a Washington corporation which identified its place of business as being in this district; and, (ii) many or most of the acts, allegations, and intellectual property which give rise to the claims herein, or to which the claims are substantially related, occurred in and/or are located in this district. *Complaint, ¶5.*



1

2

3    5.    Plaintiff, WILLIAMS BUSINESS SERVICES, INC. (hereinafter "WBS") is

4    now, and at all times mentioned in the Complaint was, a corporation organized and existing

5    under the laws of the State of Washington, with its principal place of business at 3116 NW

6    Lakeridge Drive, Vancouver, WA. *Complaint, ¶6.*

7    6.    Defendant    WATERSIDE    CHIROPORACTIC,    INC.    (hereinafter

8    "Waterside") is now, and at all times mentioned in the Complaint was, a corporation

9    organized and existing under the laws of the State of Florida with its registered address at

10   2441 West Highway 98, Suite 103, Santa Rosa Beach, Florida. *Complaint, ¶7.*

11

12   7.    Defendant DR. MICHAEL J. SMITH, D.C., is now, and at all times

13   mentioned in the Complaint was, an individual residing and practicing in Florida, and is an

14   owner and officer of Defendant Waterside Inc., exercising substantial and direct control

15   over Waterside Inc., and personally directed some or all of Waterside Inc.'s actions related

16   to the formation and breach of the contract and infringing acts giving rise to the claims in

17   the Complaint. *Complaint, ¶8; Dec. Williams, ¶9 & Exh. 3.*

18   8.    Defendant DR. SYLVIA M. SMITH DC (hereinafter "Dr. S. Smith") is now,

19   and at all times mentioned in the Complaint was, an individual residing and practicing in

20   Florida, and is an owner and officer of Defendant Waterside Inc., exercising substantial and

21   direct control over Waterside Inc., and personally directed some or all of Waterside Inc.'s

22   actions related to the formation and breach of the contract and infringing acts giving rise to

23   the claims in the Complaint. *Complaint, ¶9; Dec. Williams, ¶9 & Exh. 3.*

24

25   9.    Defendants DR. MICHAEL J. SMITH DC and DR. SYLVIA M. SMITH

26   DC are married and reside as a married couple in the State of Florida (hereinafter "Marital

27   Estate"). Some or all of the unlawfully gained benefits were intended as and/or were for

28

29



the benefit of their marital estate. *Complaint, ¶10.*

10.    The internet URL address *www.watersidechiropractic.com* (hereinafter the "Waterside Website") is personally registered to Defendant Dr. M. Smith on behalf of the Defendants. *Complaint, ¶11; Dec. Williams, ¶8 & Exh. 1.*

11.    Defendants Dr. Michael Smith and Dr. Sylvia Smith are individuals who were responsible for, directed, and/or personally participated in, at least one or more of the following acts not authorized by Plaintiff as the owner of the copyright in the work CHIROPRACTIC OFFICE WEBSITE: distributing, reproducing, publishing, publicly displaying or performing the CHIROPRACTIC OFFICE WEBSITE.    All acts of Defendants Dr. Michael Smith and Dr. Sylvia Smith were for the benefit of, and/or did benefit, their marital community. *Complaint, ¶12.*

12.    Plaintiff WBS is engaged in creation, design and development of internet websites for business which improve and enhance their visibility to internet search engines, commonly referred to as "search engine optimization" or "SEO". *Complaint, ¶14.*

13.    On or about September 6, 2013, Dr. Sylvia Smith contacted Plaintiff in Vancouver, Washington, to obtain a cost estimate and proposal for a new website for Waterside Inc. *Complaint, ¶15.*

14.    As part of the process to provide an estimate and proposal to the Defendants, Plaintiff conducted a review of Defendants' then-existing website.  This review included quantitative and qualitative review of Defendants' website's visibility to internet search engines, operability of the Website with typical internet browsers, and a written proposal to create a new website for Defendants which would incorporate certain features to improve search engine optimization of the Website. *Complaint, ¶16.*



15.     The initial SEO Proposal was delivered by Plaintiff to Defendants on or about September 18, 2013.  *Complaint, ¶17.*

16.     After Defendants reviewed the initial SEO Proposal of September 18, 2013, and further discussions between Defendants and Plaintiff, Plaintiff on or about September 26, 2013 delivered to Defendants a written Revised SEO Proposal, dated September 26, 2013.  *Complaint, ¶18 and Exh. 1; Dec. Williams Exh. 3.*

17.     On or about September 27, 2013, Defendant Dr. Michael Smith executed his signature on the SEO Proposal on behalf of Defendant Waterside (hereinafter the "Contract").  *Complaint, ¶19 and Exh. 2; Dec. Williams ¶9 and Exh. 3.*

18.     On or about September 27, 2013 Defendants delivered to Plaintiff, in Vancouver, Washington, by facsimile, a copy of the executed signature page, approving the contract, with a copy of the check covering the required 50% deposit.  A true and correct copy of that facsimile was attached as Exhibit 2 to the Complaint (partially redacted to remove the account information printed on the check).  *Complaint, ¶20 and Exh. 2; Dec. Williams Exh. 3.*

19.     The first page of the Contract lists Plaintiff's address as 3116 NW Lakeridge Drive, Vancouver, WA 98685.  The Contract included a page titled "About Us", at page 8, which states in relevant part: "We are incorporated in Washington State (USA) as Williams Business Services."  *Complaint, ¶21 and Exh. 1; Dec. Williams Exh. 3.*

20.     The Contract terms included, among other terms, that WBS would perform the work described in the Contract, for ten-thousand dollars ($10,000).  The Contract provided that the $10,000 was to be paid to WBS as follows: $5,000 initial down payment to start the project, and $5,000 upon the Website being published online (the "go-live"



RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3    date).   *Complaint, ¶22 and Exh. 1; Dec. Williams ¶12-14 & Exh. 3.*

4        21.     The Contract terms included, among other terms, that the final Website

5    would be hosted and maintained by WBS, at a cost of $650 per month payable to WBS, or

6    alternatively, by yearly lump-sum payments of $6,500 per year.   *Complaint, ¶23 and Exh.*

7    *1; Dec. Williams ¶16-17 and Exh. 3.*

8        22.     The Contract terms did not include any assignment of copyrights to any of

9    Defendants.   *Complaint, ¶24 and Exh. 1; Dec. Williams ¶16 and Exh. 3.*

10       23.     The Contract terms included, among other terms, the following printed on

11   the "Project Approval" page containing Defendants' approval signature: "Early

12   cancellation: Client agrees to pay for work performed.  There is no term agreement with

13   this agreement.  If payment for the initial work is being done over 24 payments, client will

14   be responsible for completing these payments even if ongoing work is cancelled."

15

16   *Complaint, ¶25 and Exh. 1; Dec. Williams Exh. 3.*

17       24.     The scope of work contemplated by the signed Contract comprised

18   designing and creating an 80 to 85 page website, populated with original content, with SEO

19   optimized for local search.  The Contract contemplated a maximum of two alternative

20   website designs, with two revisions of the chosen website design.   *Complaint, ¶26 and*

21   *Exh. 1; Dec. Williams ¶18-19 and Exh. 3.*

22       25.     During the course of the work, Defendants repeatedly requested substantial

23   work which was outside the scope of the Contract, including but not limited to: designing

24   and creating forty (40) extra web pages (for a total of 125 web pages for the Website);

25   maintenance of Waterside Inc.'s prior website until the new Website was ready for

26   publication; adding a "Rate Waterside" card and interface/function allowing Defendants'

27

28

29



clients to provide quantifiable feedback via the Website; establishing and populating social media pages for Waterside Inc. and its professional staff; pursuing removal of poor reviews against Defendants by former clients; providing video search engine optimization, adding a "Careers" section to aid Waterside Inc.'s employment/recruiting efforts; and, adding a "Best of the Bay" voting function to the Website to interface with a third-party business popularity contest. *Complaint, ¶27; Dec. Williams ¶18-19.*

26.   Plaintiff substantially fulfilled these out-of-scope work requests, despite the fact that they were not required by the Contract. Plaintiff performed the extra work based on the reasonable expectation of continued payments for hosting and maintaining the Website pursuant to the Contract. Some of this out-of-scope work required Plaintiff to hire outside contractors, and have employees work extra hours, whom Plaintiff was obligated to pay regardless of Waterside Inc.'s refusal to pay its obligations under the Contract. *Complaint, ¶28; Dec. Williams ¶18-19.*

27.   The added out-of-scope work also caused delays in completing the project and publishing the Website. *Complaint, ¶29.*

28.   The CHIROPRACTIC OFFICE WEBSITE created in fulfillment of the Contract was published by Plaintiff on March 27, 2014, upon the approval of Defendants, at the internet URL address *http://www.watersidechiropractic.com. Complaint, ¶30; Dec. Williams ¶12.*

29.   On or about March 31, 2014 Plaintiff delivered an invoice to Defendant Waterside Inc. for the second $5,000 payment due for the creation and publication of the CHIROPRACTIC OFFICE WEBSITE. The invoice was delivered by email, and an additional copy sent by USPS First Class mail. *Complaint, ¶31; Dec. Williams ¶ 17-18*



1

2

3   *and Exh. 6.*

4       30.     The March 31 invoice also included a line item for the first $650 monthly

5   payment for hosting and maintenance services. *Complaint, ¶32; Dec. Williams ¶ 17 and*

6   *Exh. 6.*

7       31.     During April, May and June, 2014, WBS continued to host, maintain, and

8   make changes and additions to the Waterside Website, as directed by Defendant Waterside.

9   No payments were received from Defendants. *Complaint, ¶33, 101; Dec. Williams ¶17*

10  *and Exh. 6.*

11      32.     On or about May 12, 2014 Plaintiff sent an email to Defendants requesting

12  status of payment on the March 31 invoice. Defendants acknowledged receipt of Plaintiff's

13  May 12 email on May 14, 2014. *Complaint, ¶34.*

14

15      33.     On or about May 14, 2014 Plaintiff sent an email to Dr. Michael Smith

16  stating that Plaintiff would suspend all work on the Waterside Website unless the remaining

17  $5,000 payment for the initial work, and the monthly web hosting and maintenance fees for

18  April and May (totaling $1,300) were paid.  In the May 14, 2014 email, Plaintiff clearly

19  stated that failure to pay the amounts owed was causing ongoing harm to Plaintiff's

20  business. *Complaint, ¶35.*

21      34.     On or about May 19, 2014 Plaintiff sent an email to Defendants stating that

22  Plaintiff would suspend support for the Waterside Website until Defendants paid

23  outstanding balances. Defendant Dr. Sylvia Smith acknowledged receipt by email the same

24  day. *Complaint, ¶36.*

25

26      35.     On or about May 22, 2014, Dr. Michael Smith directed WBS to

27  communicate with Don McCoy regarding the Waterside Website, the Contract and related

28

29


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

issues. Dr. Smith stated in the email, in pertinent part, that "I'm forwarding your email to Don McCoy, as he recently has been handling our contractual communication regarding website development and video SEO." *Complaint, ¶37.*

36.     Don McCoy is an owner, founder, and the CEO of Magic Broadcasting. Don McCoy was engaged by Defendants as an authorized agent to act on Defendants behalf on matters related to Plaintiff and the Contract. *Complaint, ¶38.*

37.     Theresa Poratz was hired as an employee by Plaintiff in November, 2013, with the title Social Media Manager, to assist with projects, client communications, and social media-related optimization for clients.     Thereafter, Plaintiff and Ms. Poratz maintained an ongoing employment relationship, with a reasonable expectation that this employment relationship would continue indefinitely.  Ms. Poratz was a valued employee and contributed substantial economic value to Plaintiff's business. *Complaint, ¶39.*

38.     Defendants and their authorized representatives interacted with and communicated with Ms. Poratz on multiple occasions prior to June, 2014, relating to work being performed by Plaintiff pursuant to the Contract. *Complaint, ¶40.*

39.     Defendants were aware, or reasonably should have been aware, that Ms. Poratz was an employee of Plaintiff.  Don McCoy, acting as an authorized agent of Defendants, was also aware or reasonably should have been aware, that Ms. Poratz was an employee of Plaintiff. *Complaint, ¶41.*

40.     On or about June 9, 2014, in the midst of Plaintiff's efforts to resolve the dispute between Plaintiff and Defendants, Don McCoy sent an email on behalf of Defendants to Doug Williams stating, in pertinent part, "I talked with Doug, he has fired Theresa and the boy."  The reference to "Theresa" was Theresa Poratz, known to be an



employee of WBS.  In addition to Doug Williams, the email was addressed to Dr. Sylvia Smith and others at Waterside Chiropractic, and to Theresa Poratz personally.  *Complaint, ¶42.*

41.     Doug Williams did not make the statement claimed by Don McCoy, and did not fire Theresa Poratz.  Mr. Williams considered Theresa Poratz as a valued employee. *Complaint, ¶43.*

42.     At the time that Don McCoy sent the offending email, Defendants were attempting to avoid paying their obligations under the Contract, and for ongoing hosting and maintenance fees.  *Complaint, ¶44.*

43.     The false statement communicated by Don McCoy on behalf of Defendants regarding the alleged firing of Ms. Poratz, and the fact that the false statement was published to Ms. Poratz herself simultaneously with several other persons, was deeply offensive to both Plaintiff and Ms. Poratz.   Ms. Poratz subsequently terminated her employment relationship with Plaintiff.  *Complaint, ¶45.*

44.     On or about June 1, 2014, Plaintiff received a partial payment of $2,500 from Defendants toward the remaining $5,000 owed for the initial work.  No payment was received for the monthly web hosting and maintenance services for April, May and June. *Complaint, ¶46; Dec. Williams ¶14 and Exh. 4.*

45.     Plaintiff hosted and maintained the Website for Defendant Waterside's benefit, pursuant to the Contract, from March 27 through June 30, 2014.  Plaintiff received no payment for those hosting and maintenance services.  *Complaint ¶ 31-33, 101, 105-7; Dec. Williams ¶17 and Exh. 6.*

46.     Plaintiff employees Doug Williams and Theresa Poratz contributed creative



authorship.  At the time they created their contributions of authorship, and during the creation and development of the CHIROPRACTIC OFFICE WEBSITE, Doug Williams and Theresa Poratz were employees of WBS working in Washington.  Their individual and collective contributions are works made for hire under the Copyright Act, 17 U.S.C. §§ 101, and as such WBS is the "author" and owner of their contributions.  *Complaint, ¶47.*

47.    In addition to employees, WBS engaged an independent contractor, Gold Coast Multimedia, to assist in design and development of the Website, including selection, arrangement, layout, and text writing, as well as creation of the HTML source code for the CHIROPRACTIC OFFICE WEBSITE.  Gold Coast Multimedia (hereinafter "Gold Coast") is, and was at all times relevant to the Complaint, a corporation formed and existing under the laws of New South Wales, Australia.  *Complaint, ¶48.*

48.    Australia is a signatory to both the Berne Convention and the WIPO Copyright Treaty.  *Complaint, ¶49.*

49.    Gold Coast employed its own employees to create content for the Website. Gold Coast was therefore the author and owner of their copyright protectable content at the time its employees created the content.   *Complaint, ¶50.*

50.    Gold Coast executed a written assignment to WBS on September 19, 2014 of all Gold Coast's right, title and interest in and to the content created by Gold Coast.  A true and correct copy of that assignment was attached as Exhibit 3 to the Complaint. *Complaint, ¶51 and Exh. 3.*

51.    On September 24, 2014 Plaintiff properly filed a copyright registration for the CHIROPRACTIC OFFICE WEBSITE and deposited the published version of the work with the U.S. Copyright Office, and paid the required fees, Application Service  Number 1-


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3   1772123951.  A true and correct copy of the Application was attached as Exhibit 4 to the

4   Complaint.    A true and correct copy of the Confirmation Receipt received from the

5   Copyright Office was attached as Exhibit 5 to the Complaint. *Complaint, ¶52 and Exhs. 4*

6   *& 5.*

7        52.    Plaintiff is the sole owner of the copyrighted work CHIROPRACTIC

8   OFFICE WEBSITE. *Complaint, ¶53 and Exh. 4.*

9        53.    The deposit copy of the CHIROPRACTIC OFFICE WEBSITE which was

10  submitted to the Copyright Office comprises over 1200 pages.  A true and correct black and

11  white photocopy of the first and last 25 pages of that deposit, provided for identification

12  purposes, was attached as Exhibit 6 to the Complaint. *Complaint, ¶54 & Exh. 6.*

13

14       54.    In July 2014, Plaintiff offered to grant Defendants an unlimited license to the

15  CHIROPRACTIC OFFICE WEBSITE in order to resolve the payment dispute between

16  Plaintiff and Defendants.  Plaintiff did not receive an acceptance of the offer, but Plaintiff

17  did turn over a complete electronic copy of the CHIROPRACTIC OFFICE WEBSITE to

18  Waterside's representatives and all passwords to Defendant Waterside's social media

19  accounts, and Plaintiff thereafter ceased hosting the Website on its servers and ceased

20  exercising any control over the Website, or associated blogs or social media accounts.

21  *Complaint, ¶55.*

22       55.    Defendants thereafter engaged LiquidNet US LLC (hereinafter "LiquidNet")

23  to host the CHIROPRACTIC OFFICE WEBSITE, on servers either owned or leased to

24  LiquidNet. *Complaint, ¶56; Dec. Williams ¶2-3, 6.*

25

26       56.    On or about September 8, 2014, Plaintiff received a letter from Defendant

27  Dr. Sylvia Smith, signed by Dr. Sylvia Smith, demanding further work from Plaintiff on the

28

29



Waterside Website and associated social media accounts, and threatening legal action by Waterside Inc. and Dr. Sylvia Smith personally against Plaintiff. This communication was an unequivocal rejection of Plaintiff's prior offer of an unlimited license to resolve the dispute. *Complaint, ¶57; Dec. Williams ¶10 and Exh. 2.*

57.     Additionally, the September 8, 2014 letter from Dr. Smith demonstrates that Defendants Dr. Sylvia Smith and Dr. Michael Smith viewed the Waterside Website, and associated work related to social media accounts, as intended for the benefit of and subject to control by them personally, as well as for Waterside Inc. *Complaint, ¶58; Dec. Williams ¶10 and Exh. 2.*

58.     Responsive to Dr. Sylvia M. Smith's September 8 letter rejecting the offered license, Plaintiff notified Defendants by letter dated September 29, 2014, that: (i) Plaintiff had registered the copyright in the CHIROPRACTIC OFFICE WEBSITE with the Copyright Office; and, (ii) barring a complete resolution of the dispute, the permissive license to Waterside would be revoked without further notice effective October 8, 2014. A true and correct copy of the September 29 notice sent to Defendants, without enclosures, was attached as Exhibit 7 to the Complaint. A true and correct copy of the delivery confirmation receipt was attached as Exhibit 8 to the Complaint. *Complaint, ¶59 and Exhs. 7 & 8.*

59.     Plaintiff received no response from Defendants to the September 29 notice. *Complaint, ¶60.*

60.     On October 9, 2014, Plaintiff notified Defendants by letter that, due to the lack of response by Defendants, the license to the Website was revoked, effective October 8, 2014. A true and correct copy of the October 9 notice sent to Defendants, without


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

enclosure, was attached as Exhibit 9 to the Complaint.  A true and correct copy of the delivery confirmation receipt was attached as Exhibit 10 to the Complaint. *Complaint, ¶61 and Exhs. 9 & 10.*

61.    Plaintiff received no response from Defendants to the October 9 notice of revocation. *Complaint, ¶62.*

62.    Pursuant to 17 U.S.C. § 512(c), Plaintiff delivered a DMCA "takedown" notice to LiquidNet on or about October 20, 2014 requesting that LiquidNet "expeditiously remove or disable access" to the CHIROPRACTIC OFFICE WEBSITE.   LiquidNet notified Plaintiff on or about October 24, 2014, that the Website had been taken down. Plaintiff subsequently confirmed that public access to the CHIROPRACTIC OFFICE WEBSITE had been disabled. *Complaint, ¶63.*

63.    On October 20, 2014, Plaintiff sent another letter to Defendants seeking to resolve the dispute, notifying them of the DMCA "takedown" notice sent to LiquidNet, and reiterating that Plaintiff is the owner of the copyrights covering the CHIROPRACTIC OFFICE WEBSITE and that Defendants had no license to the copyright protected work. The October 20 letter was sent expressly pursuant to FRE 408, so was not attached to the Complaint. *Complaint, ¶64.*

64.    Plaintiff received no response from Defendants to the October 20 letter. *Complaint, ¶65.*

65.    On or about October 28, 2014, Plaintiff became aware that the CHIROPRACTIC OFFICE WEBSITE was back online and being published via the internet. *Complaint, ¶66.*

66.    Sometime after October 20, 2014, Defendants engaged 1&1 Internet, Inc.

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1
2
3
(hereinafter "1&1 Internet"), to host and publish the CHIROPRACTIC OFFICE
4
WEBSITE. This hosting and publication necessarily included Defendants creating one or
5
more reproductions of the copyright protected work CHIROPRACTIC OFFICE WEBSITE
6
and distributing those reproductions to 1&1 Internet. *Complaint, ¶67; Dec. Williams ¶4.*
7
    67.    The CHIROPRACTIC OFFICE WEBSITE published via 1&1 Internet is
8
substantially similar to, and essentially identical to, the copyright protected work
9
CHIROPRACTIC OFFICE WEBSITE, which is owned by Plaintiff. *Complaint, ¶68; Dec.*
10
*Williams ¶ 4.*
11
    68.    In the course of inducing 1&1 Internet Inc. to host the Website, Defendants
12
13
reproduced the copyright protected work CHIROPRACTIC OFFICE WEBSITE, and
14
published and publicly displayed or performed the copyright protected work
15
CHIROPRACTIC OFFICE WEBSITE, in the state of Washington, and throughout the
16
United States via the internet. *Complaint, ¶69; Dec. Williams ¶6.*
17
    69.    Defendants engaged Conquest Technologies LLC (hereinafter "Conquest
18
Tech") for information technology support services, including but not limited to registering
19
Defendants' domain name and obtaining website hosting services. *Complaint, ¶70.*
20
    70.    Conquest Technologies LLC is a defunct Florida limited liability company,
21
which was administratively dissolved in 2011. Conquest Tech now operates as a
22
partnership or sole proprietorship. *Complaint, ¶71.*
23
    71.    Conquest Tech acted as Defendants' agent, or otherwise assisted, to obtain
24
25
web hosting services from LiquidNet using the URL *www.watersidechiropractic.com.* The
26
work CHIROPRACTIC OFFICE WEBSITE was published, publicly displayed or
27
performed, and distributed via that URL after October 8, 2014. *Complaint, ¶72.*
28
29



72.     Conquest Tech acted as Defendants' agent, or otherwise assisted, to obtain web hosting services from 1&1 Internet using the URL *www.watersidechiropractic.com*. The work CHIROPRACTIC OFFICE WEBSITE was published, publicly displayed or performed and distributed via that URL after October 8, 2014. ***Complaint, ¶73.***

73.     Conquest Tech's acts to obtain web hosting services from 1&1 Internet on behalf of Defendants occurred on or after Defendants became aware that LiquidNet intended to disable access to the CHIROPRACTIC OFFICE WEBSITE via the Waterside Website. ***Complaint, ¶74.***

74.     At the time Conquest Tech assisted Defendants in engaging 1&1 Internet to host the Waterside Website, including the work CHIROPRACTIC OFFICE WEBSITE, Conquest Tech was aware that LiquidNet had taken down the Waterside Website due to an allegation of copyright infringement. ***Complaint, ¶75.***

75.     On or about October 31, 2014, Plaintiff delivered a DMCA "takedown" notice pursuant to 17 U.S.C. § 512(c) to 1&1 Internet's Agent Designated to Receive Notification of Infringement, listed by the U.S. Copyright Office, requesting that 1&1 Internet "expeditiously remove or disable access" to the CHIROPRACTIC OFFICE WEBSITE.   The "takedown" notice was sent by registered mail and by email to the addresses listed on form published on the Copyright Office website, a true and correct copy of which was attached as Exhibit 11 to the Complaint. ***Complaint, ¶76 and Exh. 11; Dec. Williams ¶4; Dec. Beatty ¶2 and Exh. 1.***

76.     On or about November 4, 2014 (after the filing of the Complaint), 1&1 Internet responded to Plaintiff's DMCA Takedown Notice, confirming that the Website had been taken down. ***Dec. Beatty ¶3 and Exh. 2; Dec. Williams ¶4.***



RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3   77.   On or about November 6, 2014, Doug Williams found that the Website was

4   again being published through a website hosting company called "Hostgator.com". *Dec.*

5   *Williams ¶5-7 and Exh. 5*.

6   78.   The CHIROPRACTIC OFFICE WEBSITE published via Hostgator.com is

7   substantially similar to, and essentially identical to, the copyright protected work

8   CHIROPRACTIC OFFICE WEBSITE, which is owned by Plaintiff. *Dec. Williams ¶5.*

9   79.   Defendants operate a chiropractic business with offices in seven cities

10  throughout Florida and twelve chiropractic doctors.   Therefore, the Court presumes their

11  business is substantial. *Dec. Williams, ¶24; Dec. Beatty ¶4 and Exh. 3*.

12

13                          **CONCLUSIONS OF LAW**

14      The Court makes the following Conclusions of Law based upon the Findings of Fact

15  1-77, above.

16      **FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT AGAINST
        ALL DEFENDANTS**

17
    1.   Plaintiff owns a valid copyright in the work CHIROPRACTIC OFFICE
18
    WEBSITE. **FOF 46-51.**
19
20  2.   Plaintiff met the registration requirements under 17 U.S.C. § 411 by filing a

21  complete application with the Copyright Office, paying the required fee, and depositing a

22  complete copy of the published work with the Copyright Office.   This application was

23  complete by September 24, 2014. **FOF 53; 17 U.S.C. §§ 409-411.**

24  3.   This Court, in keeping with the Ninth Circuit, follows the "Application

25  Approach", whereby filing a complete application for registration with the Copyright Office

26  fulfills the statutory prerequisite of 17 U.S.C. §§ 411-412. *Cosmetic Ideas, Inc. v.*

27  *IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010).

28

29



1

2

3      4.      Prior to October 8, 2014, Defendants had a permissive license from Plaintiff

4      regarding the copyright protected work, either express or implied. **FOF 54, 56-60**.

5      5.      By its October 8, 2014, Notice to Defendants, Plaintiff expressly revoked

6      any permissive license, whether express or implied, to Defendants regarding the copyright

7      protected work. **FOF 58-61**.

8      6.      Defendants, jointly and severally, violated Plaintiff's exclusive rights under

9      17 U.S.C. § 106 by at least reproducing and distributing the copyright protected work in the

10     course of delivering one or more copies to LiquidNet LLC for hosting the Website. **FOF**

11     **66-68**.

12

13     7.      Defendants, jointly and severally, violated Plaintiff's exclusive rights under

14     17 U.S.C. § 106 by at least reproducing and distributing the copyright protected work in the

15     course of delivering one or more copies to 1&1 Internet, Inc., for hosting the Website.

16     **FOF 66-75**.

17     8.      Defendants, jointly and severally, violated Plaintiff's exclusive rights under

18     17 U.S.C. § 106 by at least reproducing and distributing the copyright protected work in the

19     course of delivering one or more copies to Hostgator.com for hosting the Website. **FOF**

20     **66-68; 76-78**.

21     9.      Defendants Dr. Michael Smith and Dr. Sylvia Smith, each of them and

22     together, exercised personal control and direction over the unlawful infringing acts of

23     Defendant Waterside Inc., and/or personally induced Defendant Waterside Inc. to commit

24     the unlawful infringing acts, and/or jointly participated in and contributed to the

25     commission of the unlawful infringing acts of Defendant Waterside Chiropractic Inc., and

26     thereby obtained financial benefit from those unlawful infringing acts. Defendants Dr.

27

28

29



Michael Smith and Dr. Sylvia Smith are thereby are jointly and severally liable for willful infringement with Defendant Waterside Chiropractic, Inc. **FOF 7-8, 10-11, 13, 33-35, 40, 56-57.**

10.    Defendants had actual knowledge prior to committing each of their infringing acts that Plaintiff owned the copyright in the Website, the copyright registration application was filed, and their actions infringed Plaintiff's copyright. **FOF 7-8, 10-11, 22, 56-78.**

11.    Defendants operate a chiropractic business with offices in seven cities throughout Florida and twelve chiropractic doctors.   Therefore, the Court may presume their business is substantial. **FOF 79.**

12.    Defendants' infringing acts were for their individual and collective profit, and not subject to any "Fair Use" exception under 17 U.S.C. § 107.

13.    Defendants' actions therefore constitute willful infringement under 17 U.S.C. § 504(c)(2).

14.    Defendants committed at least three separate acts of willful infringement by reproducing and distributing the copyright protected work: (1) to LiquidNet LLC, (2) to 1&1 Internet, Inc., and (3) to Hostgator.com.

15.    Each of the three separate acts of willful infringement are independently subject to assessment for statutory damages pursuant to 17 U.S.C. § 504(c).

### SECOND CLAIM FOR RELIEF: CONTRIBUTORY COPYRIGHT INFRINGEMENT BY DEFENDANTS WATERSIDE CHIROPRACTIC INC., DR. MICHAEL J. SMITH DC, AND DR. SYLVIA M. SMITH DC

16.    Conclusions of Law 1-15 and supporting Findings of Fact are relevant to this claim as well.

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

17.     The reproduction, publication, public display or performance, and distribution of the CHIROPRACTIC OFFICE WEBSITE by Defendants or their agents after October 8, 2014, was and is unlawful and infringed Plaintiff's exclusive rights under the Copyright Act. 17 U.S.C. § 501.

18.     Defendants Waterside Inc., Dr. Michael Smith, and Dr. Sylvia Smith, knew or reasonably should have known that the reproduction, publication, public display or performance, and distribution of the CHIROPRACTIC OFFICE WEBSITE after October 8, 2014, was and is unlawful and infringed Plaintiff's exclusive rights under the Copyright Act.

19.     Despite the knowledge and awareness of Plaintiff's rights, Defendants Waterside Inc., Dr. Michael Smith, and Dr. Sylvia Smith, each of them and together, induced LiquidNet, and 1&1 Internet, and Hostgator.com to infringe Plaintiff's exclusive rights by engaging each of them to reproduce, publish, publicly display or perform, and distribute copies of the CHIROPRACTIC OFFICE WEBSITE in the state of Washington and throughout the United States.

20.     Defendants' actions to induce infringement willfully and for profit violated Plaintiff's exclusive rights under the Copyright Act.

21.     Defendants are therefore jointly and severally liable to Plaintiff for the infringing acts of LiquidNet, 1&1 Internet and Hostgator.com.

22.     Defendants' acts of inducing infringement by LiquidNet, 1&1 Internet and Hostgator.com were knowing and willful.

23.     Defendants committed at least three separate acts of willful infringement by inducing infringement of the copyright protected work by: (1) LiquidNet LLC, (2) 1&1



Internet, Inc., and (3) Hostgator.com.

24.     Each of the three separate acts of willful infringement are independently subject to assessment for statutory damages pursuant to 17 U.S.C. § 504(c).

### THIRD CLAIM FOR RELIEF: VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT BY DR. MICHAEL J. SMITH DC AND DR. SYLVIA M. SMITH

25.     Conclusions of Law 1-24 and supporting Findings of Fact are relevant to this claim as well.

26.     During all times relevant to the claims in this lawsuit, Defendants Dr. Michael Smith and Dr. Sylvia Smith, each of them and together, controlled and supervised, and thereby authorized and/or directed, the infringing acts of Defendant Waterside Inc., and obtained and/or intended to obtain financial and other benefits from the infringing acts. **FOF 7-8, 10-11, 13, 33-35, 40, 56-57.**

27.     Defendants Dr. Michael Smith and Dr. Sylvia Smith are vicariously liable for the willfully infringing acts of Defendant Waterside Inc.

### COPYRIGHT DAMAGES

28.     Conclusions of Law 1-27 and supporting Findings of Fact are relevant to the determination of damages, following.

29.     Plaintiff elected statutory damages.  *See Plaintiff Motion for Entry of Judgment on Default, p. 16, Section 7.*

30.     Statutory copyright infringement damages in cases of willful infringement are assessed within a range from not less than $750 up to $150,000 for all infringements involved in the action for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more



1

2

3   infringers are liable jointly and severally, as the court considers just.   17 U.S.C. §§

4   504(c)(1) & (2).

5       31.    In this case, the Court has found that Defendants' are liable for at least three

6   separate acts of willful infringement: (1) the publication, public display or performance, and

7   distribution of the copyright protected work to, and via, LiquidNet LLC commencing after

8   October 8, 2014; (2) the reproduction, publication, public display or performance, and

9   distribution of the copyright protected work to, and via, 1&1 Internet, Inc., commencing on

10  or about October 24, 2014; and, (3) the reproduction, publication, public display or

11  performance, and distribution of the copyright protected work to, and via, Hostgator.com,

12  commencing on or about November 6, 2014 and which continues today.

13

14      32.    The Court has considered the following factors in determining the statutory

15  damages award (*see Cross Keys Pub. Co. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich.

16  1995); *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1335 (D. Mass.

17  1994); *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 363

18  (S.D.N.Y. 2003)):

19          a.    The infringing conduct was blatantly willful.

20          b.    Defendants committed at least three willful infringements.

21          c.    Plaintiff attempted to enforce its rights under the Copyright Act

22  many times without resort to litigation, and each time offered settlement which

23  included an unlimited license upon payment.   Plaintiff attempted to negotiate a

24  settlement in good faith in Summer of 2014, but was simply rebuffed.   Plaintiff

25  again attempted to resolve the matter with notice of the license revocation, but was

26  met with silence.   Plaintiff utilized the DMCA Takedown provisions of the

27

28

29

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

Copyright Act, coupled with offers of settlement, but each time Defendants simply disregarded this and commenced new infringements.

d.       Plaintiff's business is design, hosting and maintenance of websites. Plaintiff has lost future hosting and maintenance fees, which are not completely compensated for by the Breach of Contract damages.

e.       Plaintiff has suffered other harm to its business, including having to lay off employees, which are difficult to reduce to a sum certain. ***Dec. Williams, ¶23.***

f.       Defendants have profited and been unjustly enriched from their infringement, but Plaintiff is left unable to determine the amount of Defendants' ill-gotten profits. Defendants continue their infringing conduct even now, and continue to obtain profit from their infringement. This in spite of the fact Defendants could have returned to using their prior website.

g.       Defendants operate a chiropractic business with offices in seven cities throughout Florida and twelve chiropractic doctors. Therefore, the Court may presume their business is substantial. ***FOF 79.***

33.       Plaintiff argues an award of $23,400 in statutory damages per infringement is reasonable and just under the circumstances, and serves the purpose of the statutory damages and willfulness provisions of the Copyright Act.   The amount $23,400 is equivalent to the $650 per month hosting and maintenance fees for 36 months.   Plaintiff argues that this is a reasonable amount, which is well within the discretion of the Court under the Copyright Act.   Plaintiff further argues that this amount comports with due process concerns because it is an objectively reasonable and foreseeable amount, effectively


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

a license fee, rooted in a valuation of the property to which Defendants agreed and therefore indicating the value they perceived relative to their prospective profits anticipated from the Website (i.e. profits reaped by the Defendants in connection with the infringements). Additionally, this calibrates the deterrent objectives of the statute to the actual behavior and reasonably foreseeable harm caused, which is a relevant consideration in light of the tort-nature of copyright infringement.

34.     The Court accepts Plaintiff's request for $23,400 per willful infringement, for **total statutory damages of $70,200** based on the factors listed above, and the fact that this bears reasonable relationship to the actual value ascribed by the Parties in their arms-length transaction.   Additionally, Plaintiff was denied discovery regarding Defendants' actual profits, so this basis for recovery is not available.

### FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT BY DEFENDANT WATERSIDE CHIROPRACTIC INC.

35.     Plaintiff and Defendant Waterside Inc. had a valid written Contract to create and publish the Website.  **FOF 15-24.**

36.     The terms of the Contract, among other things, required up-front payment of $5,000, and the remaining $5,000 to be paid upon the Website being published on the internet.  **FOF 20, 29**.

37.     The terms of the Contract also required that Defendant was obligated to engage Plaintiff to host and maintain the Website on an ongoing basis after publication, and that Defendant Waterside would pay monthly fees of $650 per month, or $6,500 per year if paid up front annually, for these hosting and maintenance services.  **FOF 21, 44-45.**

38.     Plaintiff fulfilled its obligations under the Contract.  Plaintiff created and published the CHIROPRACTIC OFFICE WEBSITE, and the Website met the material



requirements agreed in the written Contract. Defendant Waterside accepted Plaintiff's performance. **FOF 28**

39.     Plaintiff performed work beyond the scope of the Contract in reasonable reliance on Defendant Waterside continuing to utilize Plaintiff for ongoing hosting and maintenance, in accordance with the Contract.  **FOF 24-27.**

40.     Plaintiff fulfilled its ongoing obligations under the Contract by hosting and maintaining the Waterside Website after publication.  **FOF 30-34, 44-45, 54.**

41.     Defendant Waterside breached its obligations under the Contract by:

    a.      paying only $7,500 of the $10,000 development cost (**FOF 44**);

    b.      failing to pay the $650 monthly hosting and maintenance fees for April, May and June, 2014 (**FOF 21, 31-33, 44-45**);

    c.      continued publication of the Website through third-party website hosting services, rather than through Plaintiff (**FOF 21, 45, 55-57, 66-68, 77-78**).

42.     Defendant Waterside Chiropractic is liable for direct and indirect damages to Plaintiff arising from and reasonably foreseeable from, its breaches of the Contract. *Am. Nursery Products, Inc. v. Indian Wells Orchards*, 115 Wash. 2d 217, 254, 797 P.2d 477, 497 (1990); *Lincor Contractors, Ltd. v. Hyskell*, 39 Wash. App. 317, 321, 692 P.2d 903, 907 (1984)).

43.     Direct  damages due to Waterside Chiropractic's breach amount to $4,450, as follows:

    a.      $2,500 of the original $10,000 Contract cost;

    b.      $650 per month for the three months of unpaid hosting and maintenance services (totaling $1,950).

**RYLANDER**
**& ASSOCIATES PC**
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

44.     Indirect damages due to Waterside Chiropractic's breach include lost profits reasonably expected by Plaintiff from continued future hosting and maintenance services. Plaintiff performed work which was beyond the scope of the Contract in reliance on its expectation of future profits from hosting and maintenance services, as required by the Contract.

45.     Plaintiff bases its calculation of lost profits on the following bases, which are objectively based, determined with reasonable certainty, and a reasonably foreseeable harm arising from Waterside Chiropractic's breach (*see Dec. Williams ¶19-21*):

    a.      Plaintiff's average gross profit margin for 2014 was 59%.   This calculation treated the salary of Douglas Williams, the sole shareholder/owner of Plaintiff Williams Business Services, Inc., as profit distribution.   This treatment is consistent with the fact that Plaintiff files taxes with the IRS as a "Subchapter S" corporation as a "flow through" entity.

    b.      Douglas Williams' declaration states that three years (36 months) is a reasonable estimate of the duration of the hosting and maintenance services under the Contract, based upon past experience.   At that point, it would be typical for the customer to either engage WBS to overhaul the existing website, or engage WBS or another company to create a new website.

    c.      Plaintiff calculates the lost profits as $11,121.50, as follows (*see Dec. Williams ¶19-21*):

        i.       (9 months * $650 per month * 59% profit margin) + (2 years * $6500 per year * 59% profit margin) = $11,121.50

        ii.      Plaintiff used 33 months, because the first three months

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3

4

(April – June 2014) were already included as part of the direct damages calculation.

5

6

      iii.      The first year was not paid in lump sum, so the 9 months July-March should be subject to the $650 per month rate in the Contract.

7

8

9

      iv.      For the second and third years Plaintiff applied the reduced up-front payment rate of $6,500 per year, because this payout of lump sum damages would effectively equate to up-front payments.

10

      d.      Plaintiff's calculations of lost profits are reasonable and valid.

11

12

46.      Plaintiff also claims indirect damages of $8,500 based on the expenditure of

13

labor resources directly attributable to the consequences of Waterside Chiropractic's

14

breach and all Defendants' infringing conduct.  Douglas Williams' states in his declaration

15

that he has consumed approximately 68 hours of his time from September 8, 2014 (the

16

date Defendant Sylvia Smith sent her letter threatening to sue) through February 10, 2015.

17

Mr. Williams' time is normally billed at $125 per hour. *See Dec. Williams ¶ 22*.

18

47.      Plaintiff is entitled to recover consequential damages of $8,500 arising from,

19

and reasonably foreseeable in light of, Waterside Chiropractic's breach.

20

48.      Alternatively, the Court may take these consequential damages into account

21

in determining the Statutory Damages award under the Copyright Infringement claims.

22

23

**FIFTH CLAIM FOR RELIEF: DEMAND FOR EQUITABLE RELIEF OF QUANTUM MERUIT AGAINST ALL DEFENDANTS**

24

49.      Plaintiff has waived this claim in favor of the Breach of Contract claim

25

(Fourth Claim for Relief) as redundant and mutually exclusive in light of the default

26

judgment.  Plaintiff reserved the right to revive this claim in the event the default is vacated.

27

**SIXTH CLAIM FOR RELIEF: UNJUST ENRICHMENT BY ALL**

28

29

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1
2
3

**DEFENDANTS**

4   50.   Plaintiff has waived this claim in favor of the Breach of Contract claim

5   (Fourth Claim for Relief) as redundant and mutually exclusive in light of the default.

6   Plaintiff reserved the right to revive this claim in the event the default is vacated.

7

### ATTORNEY'S FEES AND COSTS OF SUIT

8   51.   The Copyright Act provides that in cases of willful infringement the Court

9   may award the prevailing party its reasonable attorney's fees and costs.  The Court applies

10   principles of equitable discretion in determining the amount of attorney's fees.  17 U.S.C. §

11   505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455

12   (1994).

13

14   52.   A nonexclusive list of factors to be considered in determining the award of

15   fees includes *(see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (FN 19), 114 S. Ct. 1023,

16   1033, 127 L. Ed. 2d 455 (1994)(quoting and *Lieb v. Topstone Industries, Inc.,* 788 F.2d

17   151, 156 (1986)):

18     a.   frivolousness of the nonprevailing party's defenses;

19     b.   motivation of the losing party;

20     c.   objective unreasonableness of the losing party's factual and legal

21   claims/defenses; and,

22     d.   "the need in particular circumstances to advance considerations of

23   compensation and deterrence."

24
25   53.   The fourth factor, i.e. the need to advance considerations of compensation

26   and deterrence, weighs heavily in this consideration. *Magnuson v. Video Yesteryear*, 85

27   F.3d 1424, 1432 (9th Cir. 1996).

28
29



54.     The Court finds the factors weigh heavily in favor of awarding the full amount of Plaintiff's reasonable attorney's fees.

a.     Frivolousness.     Defendants' failure to appear, despite being represented by counsel, should be considered frivolous, causing Plaintiff to needlessly incur costs and fees.  This is especially so, in light of the fact that Defendant Waterside Chiropractic, Inc., is a corporation of substantial size that continues to operate as a going concern.

b.     Motivation.  Under the circumstances, Plaintiff is unable to assess Defendants' motivation in driving this case to litigation.  The Court should apply a presumption of bad faith motivation in light of the other circumstances.  Regarding individuals Sylvia and Michael Smith, Plaintiff acknowledges that (assuming their counsel's representations to be true regarding Sylvia Smith's health) they might face challenges in answering the claims.  However, the Court must consider other factors as outweighing this.  First, their illegal conduct pre-dated the medical issues raised by their counsel, which were raised only after the time for Waterside Chiropractic to file an Answer expired.  Second, Plaintiff made multiple attempts to resolve this dispute before filing this lawsuit, and those settlement offers were delivered to their attorney as well as to them personally.  Neither they, nor their attorney, even acknowledged the communications.  Third, at a time when they may claim to have been unable to respond (although there is no reason that their attorney was unable to communicate), they were able to twice circumvent valid DMCA Takedowns.  Finally, Plaintiff's counsel expressly told Defendants' counsel, Mr. Perry, that Plaintiff would not oppose Mr. Perry filing a motion to extend the time to file an



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

Answer with this Court on the grounds that Mr. Perry was not admitted to the Court, if Defendants submitted declarations to support their representations about Sylvia Smith's ill health and explanation of why Waterside Chiropractic was also rendered unable to appear. Defendants' counsel did not respond, and did not submit the matter to the Court. There is no valid excuse.

      c.    Objective Unreasonableness.    This factor weighs in favor of awarding costs and attorney's fees. The fact that Plaintiff delivered written notice to Defendants and their counsel that Defendants were infringing, and their subsequent re-publication of the Website after two DMCA Takedown's, renders their defenses objectively unreasonable.

      d.    Deterrence and Compensation. This is a dominant factor to consider under the circumstances of this case, and weighs heavily in favor of awarding costs and attorney's fees. The *Magnuson* court noted that in cases where Defendants flagrantly flout the copyright laws and essentially dare a copyright owner to incur expenses of a lawsuit to enforce their rights, awarding attorney's fees is essential to effective deterrence. *Magnuson v. Video Yesteryear*, No. C-92-4049 DLJ, 1996 WL 784564, at *3 (N.D. Cal. Dec. 26, 1996). Additionally, Plaintiff tried to pursue a path which entailed the least legal costs, but was simply rebuffed without explanation at every attempt. Plaintiff should not be penalized for first attempting to resolve this dispute and enforce its rights without resort to the expense of a lawsuit.

    55.    The Court awards Plaintiff its costs in suit, and 100% of its reasonable attorney's fees. The final determination of reasonable amounts shall be determined by the

30—*[PROPOSED]* ORDER RE ENTRY OF JUDGMENT ON DEFAULT
(3:14-cv-05873-BHS)
3/16/2015 2:17:54 PM DOW1.003



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

Court upon Plaintiff's submission of a Bill of Costs to the Court after entry of this Order. The Court finds that the award of attorney's fees and costs shall include amounts associated with the pre-litigation enforcement efforts utilizing the DMCA take down provisions, after September 8, 2014.

## **PREJUDGMENT AND POSTJUDGMENT INTEREST**

56.     Plaintiff requested prejudgment and postjudgment interest in its Prayer for Relief. *See Complaint, Prayer for Relief, ¶(g)*.

57.     Post-judgment interest is mandatory under 28 U.S.C.A. § 1961 and applies to attorney's fees and costs as well as any damages awarded, regardless whether the claims are state or federal causes of action. *Lew Wenzel & Co. of S. California v. London Litho Supply Co.*, 563 F.2d 1367, 1369 (9th Cir. 1977); *Raff v. Maggio*, 746 F. Supp. 1207, 1208 (E.D.N.Y. 1990)(citing *Lew Wenzel & Co., id*).

58.     Pre-judgment interest is recoverable in copyright infringement actions, in the discretion of the Court.  Such remedy is especially appropriate in cases, such as here, of willful infringement, because it is consistent with the intent to discourage needless delay and frivolous defenses.     *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g,* No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004).

59.     Prejudgment interest is also presumptively available in cases such as breach of contract, where the claim is either liquidated or a readily determinable sum, in order to make the plaintiff whole.     *Hansen v. Rothaus*, 107 Wash. 2d 468, 472, 730 P.2d 662, 664 (1986). *See also McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1130 (9th Cir. 2004)(applying NV state law).  "[P]rejudgment interest traditionally has been considered



part of the compensation due plaintiff." *Id.*

60.     In this case, WBS was denied full payment on a contract for development and continuing provision of services in which it had to pay expenses out-of-pocket for employees, contractors and leasing server space, among other things. Prejudgment interest is necessary to make Plaintiff whole, and no equitable factors weigh against an award.

61.     The Court finds that Plaintiff is entitled to prejudgment interest on damages awarded for Claims I, II, III, Copyright Infringement, commencing from October 9, 2014, the date the first infringement commenced.

62.     The Court finds that Plaintiff is entitled to prejudgment interest on damages awarded for Claim IV, Breach of Contract, commencing from June 30, 2014, the date the Contract was effectively terminated for lack of payment and the last date of services provided under the Contract.

63.     The Court finds that Plaintiff is entitled to postjudgment interest on the award of costs and attorney's fees.

64.     Plaintiff asserts that the rate of interest provided in 28 U.S.C. § 1961 is appropriate to be applied for all prejudgment and postjudgment interest amounts, for the sake of simplicity. The Court finds that this is reasonable. The rate specified in 28 U.S.C. § 1961(a) is appropriate for prejudgment as well as postjudgment interest.

### SUMMARY OF JUDGEMENT AND AWARD

65.     The Court grants Plaintiff's motion to enter judgment against all Defendants, jointly and severally, on Claims I, II and III, for willful copyright infringement, inducement and vicarious liability. The Court finds Defendants' liable for three separate willful infringements.



1

2

3    66.    The Court grants Plaintiff's motion to enter judgment against Defendant

4    Waterside Chiropractic, Inc., on Claim IV, breach of contract.

5    67.    Plaintiff waives Claims V and VI in light of judgment on Count IV, without

6    prejudice in the event the judgment might be vacated.

7    68.    The Court grants Plaintiff's request for statutory damages for willful

8    infringement, for a total of $70,200 on Counts I, II and III (copyright claims).

9    69.    The Court grants Plaintiff's request for direct and indirect damages

10   of $24,071.50 on Claim IV (breach of contract claim).

11   70.    The Court grants Plaintiff's request for prejudgment interest on Claims I, II

12
     and III (copyright claims) commencing from October 9, 2014.
13

14   71.    The Court grants Plaintiff's request for prejudgment interest on Claim IV

15   (breach of contract) commencing from June 30, 2014.

16   72.    The Court grants Plaintiff's request for post-judgment interest on all

17   damages, costs and attorney's fees.

18   73.    The Court grants Plaintiff's request for costs of suit as the prevailing party,

19   in an amount to be determined.

20   74.    The Court grants Plaintiff's request for reasonable attorney's fees as the

21   prevailing party, in an amount to be determined.

22   75.    Plaintiff is directed to submit a Bill of Costs to the Court within fourteen

23   (14) days after entry of this Order.

24

25

26

27

28

29   33—*[PROPOSED]* ORDER RE ENTRY OF JUDGMENT ON DEFAULT
     (3:14-cv-05873-BHS)
     3/16/2015 2:17:54 PM DOW1.003



DATED this ___ day of _____, 2015.

_____
Benjamin H. Settle
United States District Judge

Presented by:

/s/ Mark E. Beatty
MARK E. BEATTY, WSBA 37076
beatty@rylanderlaw.com
RYLANDER & ASSOCIATES PC
P.O. Box 250
Vancouver, WA 98666
Tel: (360) 750-9931
Fax: (360) 397-0473
Attorney for Plaintiff

